UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-12030-RGS

DEBRA FELDMAN

v.

SHONDA RHIMES et al.

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTIONS TO DISMISS

December 16, 2014

STEARNS, D.J.

In this copyright action, plaintiff author Debra Feldman alleges that the 2011 ABC television medical drama, *Off the Map*,[1] infringes the two books and two manuscripts in her *Overlap* quadrilogy, and in particular, the unpublished *The Red Tattoo.* The court, having considered the allegations of the Amended Complaint, the excerpts of *The Red Tattoo* and a companion manuscript *Days of Grace* submitted by Feldman, and having reviewed, yes, watched (albeit with diminishing anticipation) all thirteen

---

[1] *Off the Map* aired for thirteen episodes in early 2011 to generally unappreciative reviews. The series was canceled in May of 2011.

episodes of *Off the Map*,[2] finds that Feldman has failed to make a plausible claim of probative similarity between her works and defendants' creation.

To survive a motion to dismiss, the "[f]actual allegations [of a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

> To show actionable copying and therefore satisfy *Feist*'s second prong, a plaintiff must first prove that the alleged infringer copied plaintiff's copyrighted work as a factual matter; to do this, he or she may either present direct evidence of factual copying or, if that is unavailable, evidence that the alleged infringer had access to the copyrighted work and that the offending and copyrighted works are so similar that the court may infer that there was factual copying (i.e., probative similarity).

*Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir. 1995), *aff'd* 516 U.S. 233 (1996).

---

[2] Although the inquiry at this stage is usually limited to the (assumed true) allegations of a complaint, the court may consider "documents central to plaintiffs' claim; or [] documents sufficiently referred to in the complaint." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). Here, both the asserted and allegedly infringing works are integral to the claims and the Amended Complaint.

To determine whether probative similarity exists between two works, "the Court should ask whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work. . . . In doing so, the Court should note similarities and dissimilarities in such aspects as the total concept and feel, theme, characters, plot, sequence, pace, and setting." *Blakeman v. The Walt Disney Co.*, 613 F. Supp. 2d 288, 304-305 (E.D.N.Y. 2009) (internal quotation marks omitted).

> To the extent that the copyrighted work and the allegedly infringing work exhibit probative similarities from which actual copying might be inferred, the ensuing analysis must address the question of substantial similarity (and, thus, determine whether wrongful appropriation occurred). While a finding of substantial similarity *vel non* derives from an examination of the juxtaposed works as a whole, that examination must focus on what aspects of the plaintiff's work are protectible under copyright laws and whether whatever copying took place appropriated those [protected] elements.

*Johnson v. Gordon*, 409 F.3d 12, 19 (1st Cir. 2005) (internal quotation marks omitted).

"In the case of literary works, it is axiomatic that copyright protection only extends to the expression of the author's idea, not to the idea itself." *Warner Bros. Inc. v. Am. Broad. Cos., Inc.*, 654 F.2d 204, 208 (2d Cir. 1981); *see also Johnson*, 409 F.3d at 19 ("[C]opyright law protects original

expressions of ideas but it does not safeguard either the ideas themselves or banal expressions of them.").

> The [] scènes à faire doctrine[] limit[s] the availability of copyright protection even for expression. . . . The doctrine of "scènes à faire" "denies copyright protection to elements of a work that are for all practical purposes indispensable, or at least customary, in the treatment of a given subject matter." . . . *Beal v. Paramount Pictures Corp.,* 20 F.3d 454, 459 (11th Cir. 1994) (describing scènes à faire as "stock scenes that naturally flow from a common theme," such as "foot chases and the morale problems of policemen, not to mention the familiar figure of the Irish cop" in police fiction).

*Harney v. Sony Pictures Television, Inc.*, 704 F.3d 173, 181 n.8 (1st Cir. 2013).

Weighing their "total concept and feel, theme, characters, plot, sequence, pace, and setting," no reasonable lay observer would recognize *Off the Map* as derivative in any respect of *The Red Tattoo*. *Off the Map* is a medical procedural drama set in a clinic in a jungle region of an unidentified South American country. Each episode features exotic accidents and diseases and their unorthodox treatments by a heroic band of mostly expatriate doctors working in extreme conditions. In the first episode (*Saved by the Great White Hope*), Dr. Ben Keeton ("one of the greatest humanitarians of our time," episode 1) and Dr. Lily Brenner ("control freak," episode 2 – *Smile. Don't kill anyone*) come to the rescue

of a man (Ed) stranded on a zipline after crashing into a tree.  To free Ed, Drs. Keeton and Brenner zipline out to where he is entangled in the zipline's reeling mechanism.  Dr. Brenner, while dangling from the zipline, manages to cut through the mangled flesh of Ed's arm.  Ed later undergoes surgery and is found to be in need of a blood transfusion.  Ed's rare blood type being in short supply, the innovative Dr. Keeton rushes from the operating room, climbs a coconut tree with a machete, and hacks down an armload of green coconuts.  Ed is given a coconut water transfusion and his life is saved.  Other examples of unusual medical challenges include a man caught in a green anaconda's vise, which conveniently serves as a tourniquet to staunch his internal bleeding from a shattered hip (episode 2); a man suffering from a prolonged priapism caused by a banana spider bite (episode 4 – *On the Mean Streets of San Miguel*); an underwater amputation (episode 5 – *I'm Here*); treating acute appendicitis and viral meningitis after the clinic's dispensary has been robbed and completely ransacked (episode 6 – *It's Good*); a black market kidney transplant (episode 11 – *Everything's As It Should Be*); and a female doctor (Dr. Ryan Clark) who suffers from Chagas disease (resulting from a childhood bite by an assassin bug) and who ultimately requires a heart transplant (multiple episodes).

Despite the fractured nature of her submitted excerpts – Feldman has offered the court 55 pages of the 229+ page *Red Tattoo* manuscript with numerous breaks in continuity, as well as redacted sentences and paragraphs on most pages – it is evident that *The Red Tattoo* is not a jungle medical melodrama. *The Red Tattoo* tells stories set in different times and places, *see e.g.*, *id.* at 57 (Detroit – 1905), *id.* at 74 (Brookline – 1991), and *id.* at 115 (Boston Memorial – 2005), involving characters who travel through time.[3] *See id.* at 53 ("Had she lived during Dori's lifetime or Cathy's or even Bubbie's, Penicillin and its cousins might have saved Rachel, but those drugs didn't exist in her own Time or the Time to which she traveled."). Feldman contends that a clinic in Bali (Indonesia), a location briefly mentioned in *The Red Tattoo*, is the inspirational source of the South American jungle clinic in *Off the Map*. However, the generalized concept of an underequipped tropical clinic is not copyrightable, and *The Red Tattoo* offers scant description of the Bali clinic other than to say it is "next to the market" and "merely a way-station" where "rinsing [a patient's]

---

[3] In the *Days of Grace* excerpt, it is made clear that Reweavers travel in time – or Overlap, hence the title of Feldman's opus – in order to "touch the past so that the future might be repaired." *Id.* at 3. Reweavers suffer from vivid nightmares of the past.

nail in sterile solution was the extent of the center's available aid."[4]  *Id.* at 104.  The clinic in *Off the Map* differs in each respect (assuming that such a sparse description is even eligible for copyright protection).  The clinic in *Off the Map* is not next to a market, is the only medical facility available in the area it serves, and is able to perform sophisticated medical procedures including brain surgery, kidney transplant, and the implantation of a pacemaker.

Feldman's attempts to correlate the plots fare no better.  She argues that episode 1 of *Off the Map* is derived from a motor scooter accident that takes place in *The Red Tattoo*.  No reasonable observer, however, could agree.  In *The Red Tattoo*, a man (Gil) and a woman (Dori) experience an accident when their motor scooter is cut off, causing it to overturn and skid

---

[4] The entirety of the paragraph that concerns the medical center reads:

> The local who hoisted the scooter rushed the injured man into a medic's building next to the market.  Against vigorous protests and not understanding who the girl was the locals made her wait outside frustrated and fretting.  The medic center was merely a way-station and the injured man needed a hospital where his injured hand properly could be treated.  Rinsing the nail in sterile solution was the extent of the center's available aid, which was insufficient to remove the dirt now embedded in the delicate tissue that once was *under* his nail, ripped-up quick to cuticle in the fall. The injured man finally emerged from behind closed doors, his hand in a gauze bandage.

*Id.* at 104.

several meters.  As a result, Gil suffers a torn fingernail and is treated at the local medical center.  In *Off the Map*, Dr. Keeton and Dr. Brenner ride a motor scooter to the location of Ed's zipline accident.  There the parallel ends.  There is no motor scooter accident and Ed's injuries are considerably graver than a broken nail.  After the intrepid doctors reach the scene, the motor scooter disappears and is not to be seen again.

In another example of mind-bending comparison, Feldman contends that the treatment of a diabetic patient in *The Red Tattoo* provides the source of the storylines in episodes 1 and 9 of *Off the Map*.  The personage of an uncooperative diabetic who deviates from his prescribed diet is, at best, a stock scènes à faire character.  *The Red Tattoo* does not describe David (the errant diabetic patient) or his treatment in anything but unprotectable abstractions.[5]  Moreover, neither the episode 1 nor the

---

[5] The entirety of the passage concerning David, the diabetic, reads as follows.

> Suddenly, David collapsed.  Dori checked for vitals while Gede ran to the bathroom and rummaged through David's medicine cabinet. *He's an insulin diabetic,* Gede called out.  And, an uncooperative patient.  David lived on the edge eating things he knew he should not.  That night was no exception and his diabetic shock could have degenerated into a coma from which David might never emerge.  Why being there and Gede's help and Jeep saved David's life.  Why and Gede spent several less exciting nights but always, at some point, checked in on David.

episode 9 storylines in *Off the Map* involves the successful treatment of a diabetic patient. In episode 1 of *Off the Map*, the "uptight" (episode 2) Dr. Mina Minard is dismissive of an elderly woman who suffers from asthma. Dr. Minard misdiagnoses her ailment as a common cold in part because of a language barrier, and in part because the death of a previous patient has shaken her confidence in her diagnostic abilities. After the patient faints, however, Dr. Minard recognizes her mistake and gives the patient one of her personal inhalers. The grateful patient, in turn, gifts Dr. Minard with a chicken, which she names Dinner and keeps as a pet. In episode 9 (*There is Nothing to Fix*), Richie Salerno, the owner of a local dining spot, Mama Salerno's Pizzeria, suffers from a posterior fungal infection that is a side effect of untreated diabetes. Salerno is rude, scathing, and heartless. Dr. Minard attempts to intimidate him into caring for his health, but the treatment-resistant Salerno settles the score by dying.[6]

---

*Id.* at 113.

[6] The most ridiculous (and offensive) example is Feldman's attempt to equate a boy who accidentally shoots a squirrel in the chest with a BB gun, killing it, to Dr. Tommy Fuller's off-color remarks to Drs. Brenner and Minard that they should apply sunscreen before plying the local nude beaches to avoid prematurely shriveled chests. Feldman characterizes both vignettes as depicting "an 'animal' suffer[ing] a 'tragic' chest injury." Am. Compl., Ex. A at 2 & 9.

In terms of characters, Feldman employs a similar telescoping technique in which virtually every persona in *Off the Map* is espied in *The Red Tattoo*. To overcome the discrepancy between the two people involved in the motor scooter accident in *The Red Tattoo* and the three who are featured in the zipline rescue episode of *Off the Map*, Feldman equates the injured male scooter rider with both the doctor and the treated patient. Even less convincingly, *The Red Tattoo* character of Gede is alleged to be a source for seven *Off the Map* characters. *See* Am. Compl., Ex. A at 2 (Dr. Tommy Fuller/Gede and Charlie (a young translator)/Gede), *id.* at 3 (Dr. Ben Keeton/Gede), *id.* at 5 (Dr. Otis Cole/Gede), *id.* at 9 (Dr. Lily Brenner/Gede); *id.* at 10 (Dr. Ryan Clark/Gede); and *id.* at 12 (Dr. Zita Alvarez/Gede). The characters' supposedly shared biographical histories also diverge in relevant details. For example, while Dr. Brenner in *Off the Map* and Dori in *The Red Tattoo* have both lost their fiancés, Dr. Brenner's fiancé perished in a bicycle accident while shopping for her favorite cereal, while Dori's fiancé perished in a bomb blast when he would not leave a bar at Dori's urging.

Feldman's attempts to draw comparisons to her other works are equally implausible. Feldman cites *Days of Grace* as the source for episode 4 (*On the Mean Streets of San Miguel*) of *Off the Map*. In three pages of

*Days of Grace*, the main character (Grace) travels back in time to a Nazi concentration camp where she attempts to win the trust of a woman prisoner. The woman, fearing that Grace is a Gestapo spy, offers Grace the clothes off her back. Grace learns that the prisoner had given up her infant son to another couple to ensure his safety. In *Off the Map*, Dr. Minard treats Abuelito, an elderly and much beloved teacher of local children, for advanced mouth cancer. While delirious, Abuelito confesses that he served as an SS guard in his youth and stole jewelry and other valuables from inmates in his charge. Dr. Minard stabilizes his condition and turns him over to the authorities. Other than illusions to Nazis, there is no resemblance between the two stories.

The allegations of the Amended Complaint also reveal a lack of comparable original elements between *Off the Map* and Feldman's *An Ordinary Hero* and *The Comfort of Strangers*. For example, Feldman compares the zipline accident in episode 1 of *Off the Map* to falling down a flight of stairs, Am. Compl. ¶ 112, a lake that lights up with florescent microorganisms to fireworks, *id.,* a green anaconda to a spear, *id.,* a ring to a bullet, *id.,* and a selfless and giving couple who are in love to a pair of selfish and petty adolescents who detest one another. *Id.* ¶ 113.

Because Feldman has utterly failed to meet her entry-level burden of showing some plausible probative similarity between her works and *Off the Map*, the Amended Complaint will be dismissed for "failure to state a [copyright] claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

ORDER

For the foregoing reasons, defendants' motions to dismiss are <u>ALLOWED</u> with prejudice.[7]  The Clerk is directed to enter judgment for the defendants and close this case.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

[7] Because the court finds that Feldman has not alleged a viable copyright claim, it is unnecessary to reach the alternative grounds of dismissal (such as the lack of plausible access to Feldman's unpublished works) raised by defendants' motions.